Anthony O. Egbase, Esq. (SBN 181721)
**A.O.E LAW & ASSOCIATES**
350 South Figueroa Street, Suite 189
Los Angeles, California 90071
Tel. (213) 620-7070; Fax. (213) 620-1200
Email:  info@aoelaw.com

Attorney for Debtor and Debtor-in-possession
*Paula Rae Oliver*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re | CASE NO. 2:15-bk-18116-VZ |
|---|---|
| **PAULA RAE OLIVER,** | CHAPTER 11 |
| *Debtor and Debtor-in-possession.* | **DEBTOR'S MOTION FOR AUTHORITY TO SELL ESTATE PROPERTY ( 1 ROCKINGHORSE, RANCHO PALOS VERDES, CA 90275) FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF PAULA RAE OLIVER IN SUPPORT THEREOF** |
| | **HEARING DATE:** |
| | Date:  August 7, 2018 |
| | Time:  11:00 AM |
| | Place: 255 E. Temple Street |
| | Courtroom 1368 |
| | Los Angeles, CA 90012 |

**TO THE HONORABLE VINCENT ZURZOLO, UNITED STATES BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE, SECURED CREDITORS, TWENTY LARGEST UNSECURED CREDITORS, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE,** Paula Rae Oliver, the above-captioned debtor and debtor-in-possession (the "Debtor"), respectfully moves this Court for the entry of an order authorizing and approving the sale of Debtor's real property located at 1 Rockinghorse, Rancho Palos Verdes, CA 90275 (the "Subject Property") free and clear of all liens, claims and interests pursuant to 11 U.S.C. §363, and granting certain additional relief requested herein and in the attached Memorandum of Points and Authorities (the "Motion").

Freetown Holdings Company, Inc. (the "Buyer"), unrelated to the Debtor, has made an offer to purchase the Subject Property for the sum of $1,200,000.00. By this Motion, the Debtor seeks approval of the sale of the Subject Property to the Buyer, subject to overbid, and for the additional relief set forth below.

**PLEASE TAKE FUTHER NOTICE** that pursuant to *Local Bankruptcy Rule 9013-1,* any party opposing the relief sought by the Motion must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Motion to be determined by the Court. Any factual allegations set forth in such written response must be supported by competent and admissible evidence.

Dated: 07/16/18                    By:    **A.O.E LAW & ASSOCIATES**

/s/ Anthony O. Egbase
Anthony O. Egbase
Attorney for the Debtor
*Paula Rae Oliver*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Paula Rae Oliver, the above-captioned debtor and debtor-in-possession in the instant Chapter 11 case (the "Debtor"), respectfully moves this Court for the entry of an order authorizing and approving the sale of Debtor's real property located at 1 Rockinghorse, Rancho Palos Verdes, CA 90275   (the "Subject Property") free and clear of all liens, claims and interests pursuant to 11 U.S.C. §363, and granting certain additional relief requested herein (the "Motion").  Freetown Holdings Company, Inc. (the "Buyer") unrelated to the Debtor, has made an offer to purchase the Subject Property for the sum of $1,200,000.00.  Thus, Debtor seeks approval of the sale of the Subject Property to the Buyer, subject to overbid, and for the additional relief set forth below.

### II.    STATEMENT OF FACTS

#### A.    Background of the Debtor's Bankruptcy Case

The Debtor commenced the instant bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on May 5, 2015. Debtor is employed as a real estate agent and broker.  As a result of the economic downturn in 2008, Debtor suffered a loss in income and fell behind on her mortgage payments for her real properties.  Debtor commenced this bankruptcy case to reorganize her debts and avoid foreclosure of her real properties including the Subject Property.

On May 12, 2016, the Court entered the Order confirming Debtor's Chapter 11 Plan of Reorganization (the "Plan").  On or around March 6, 2018, Debtor's counsel received Notice of Default under Chapter 11 Plan regarding the Subject Property from

counsel for secured lender, Ocwen Loan Servicing, LLC ("Ocwen") in the amount of $33,819.93. Attached as Exhibit "1" is a true and correct copy of the Notice of Debtor's Default. As result, Debtor decided it would be in the best interest of the estate to sell the Subject Property in order to pay off Ocwen's first deed of trust in full, remaining balances to the LA County Tax Collector and the Court approved application for compensation for legal services rendered in the amount of $27,215.18 entered on March 19, 2018 (Docket Number 196) and estimated $5000.00 for additional fees for legal services rendered since approval of prior fee application and for services rendered in preparation of this motion.

On or about March 23, 2018, Debtor listed Subject Property for sale for $1,569,000.00 and executed a Residential Listing Agreement. Attached as Exhibit "2" is a true and correct copy of the Residential Listing Agreement.


**B.    Brief Summary of the Terms of the Sale of the Subject Property**

On or about July 6, 2018, the Debtor accepted an offer to purchase the Subject Property by the Buyer in the amount of $1,200,000.00. The Buyer is unrelated to the Debtor. A true and correct copy of the Purchase Agreement between the Debtor and the Buyer is attached hereto as Exhibit "A." By way of summary, the principal terms of agreement are as follows:

(1) The purchase price of the Subject Property is $1,200,000.00

(2) The Subject Property will be sold "as is, where is" with no warranties or representations of any kind whatsoever; and

(3) Escrow is to close upon this Court's approval.

### C.    Liens, Encumbrances and Other Interests

The Subject Property is encumbered by the following liens in the following priority:

| Ocwen Loan Servicing, LLC | $900,000.00 |
| LA County Tax Collector: Unpaid Taxes from 07/01/2018 to 09/01/2018 | $2,134.70 |
| LA County Tax Collector: 2017-2018 Taxes plus penalty | $14,099.03 |
| LA County Tax Collector: Tax Default | $18,605.94 |
| Total Liens | $934,839.67 |

### D.    Payment of Other Expenses

Debtor proposes that she be authorized to pay the following additional amounts below.  Attached as Exhibit "B" herein is a true and correct copy of Settlement Sheet (Escrow Instructions).

(1) The Buyer's broker's commission totaling 5.0% ($48,000.00) of total sale proceeds; and

(2) Fees in the sum of $27,215.18 for payment regarding Court approved bankruptcy administrative fees for legal services rendered.

(3) Debtor's counsel also estimates the sum of $5000.00 in additional fees for services rendered since approval of prior fee application and for services rendered with this motion.

### E.    Marketing Efforts and Identification of the Buyer

The Debtor listed this property for sale with Dream Home 4 U Realty & Investments ("Dream Home Realty").  The Subject Property was originally listed at

$1,569,000.00. Since that time, Debtor listed the property on the Multiple Listing

Service ("MLS") for several months. The only offer for the Subject Property was from

the Buyer who has agreed to pay $1,200,000.00.

**F.     Sale of the Property is in the Best Interest of the Estate**

The Subject Property is currently a financial burden to Debtor and the estate.

The Debtor respectfully submits that the proposed sale is in the best interest of her

estate and her creditors because, as demonstrated herein, the proposed sale will result

in (1) payoff of the Ocwen's first deed of trust; (2)  payoff of the Los Angeles County Tax

Collector's secured claim and (3) payoff bankruptcy fees for legal services rendered.

**G.     Recommended Overbidding Procedures**

The Debtor proposes the following overbidding procedures:

(1)     The initial overbid must be must be at least $10,000 more than the initial

bid of $1,200,000.00. The overbid must be on substantially the same

terms as set forth in the Purchase Agreement attached hereto as Exhibit

"A."

(2)     Overbid increments will be $10,000 after the initial overbid.

(3)     Any successful overbidder must be able to close by the Proposed Closing

Date, or upon this Court's approval whichever is later.

(4)     Any party wishing to overbid on the Property during the hearing on the

Motion must contact Debtor's counsel at least 48 hours prior to the

hearing and provide evidence of available financial resources such as

funds and/or proof of ability to finance at least $10,000.00 over the Buyer's

offer of $1,200,000.00.

(5)    Any overbidder wishing to overbid on the Subject Property during the hearing must also submit, before the time of the hearing, a deposit for the purchase of the Subject Property, by cashier's check or other cash equivalent in the amount of at least $36,000.00 made payable to "A.O.E LAW & ASSOCIATES CLIENT TRUST ACCOUNT."  The successful overbidder's deposit will be applied towards the purchase of the Subject Property, and will not be refunded in the event the overbidder cannot successfully close escrow pursuant to the terms of the sale as proscribed herein.

(6)    If a broker brings a prospective bidder who is ultimately the successful bidder and to whom the sale is approved, the broker will receive a commission of 2.5% of the sales price of the Subject Property.

### III.    LEGAL DISCUSSION

**A.    The Court Should Authorize the Debtor to Sell the Property**

*1.    The Debtor Has Complied with All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property.*

Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1).

Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires at least 21days notice of a proposed sale of property of the estate other than in the

ordinary course of business, unless the Court for cause shown shortened the time or

directs another method of giving notice. Fed. R. Bankr. Proc. 2002 (a)(2). Rule

2002(c)(1) requires that the notice of a proposed sale include the date, time and place

of any public sales, the terms and conditions of any private sale, and the time fixed for

filing objections. Fed R. Bankr. Proc. 2002(c)(1). It also provides that the notice of sale

or property is sufficient if it generally

describes the property. Id.

Rule 6003(c) provides that a motion for authority to sell property free and

clear of liens or other interests must be made in accordance with Rule 9014 and must

be served on the parties who have liens or other interests in the property to be sold. Fed

R. Bankr. Proc. 6004(c). Local Bankruptcy Rule 9013-1(d)(2) requires that a notice of

motion and motion be served at least 21 days before the hearing on the date specified

in the notice. Loc. Bankr. R. 9013-1(d)(2).

The Debtor will serve all creditors in her case. The Debtor has complied with

all of the above provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy

Procedure and the Local Bankruptcy Rules.

**2.      *The Sale Motion Should be Approved Because Good Business***

**   *Reasons Exist to Approve the Sale of the Subject Property, the***

**   *Purchase Price for the Property is Fair and Reasonable, and the***

**   *Proposed Sale is in the Best Interests of the Debtor's Estate and Her***

**   *Creditors.***

As a general matter, a Court considering a motion to approve a sale under

§363(b) should determine from the evidence presented before it that a "good business

reason"exists to grant such a motion. In re Lionel Corp., 722 F.2d 1063, 1071 (2d. Cir. 1983). In addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

    (1)    the sale is fair and reasonable (i.e., the price to be paid is adequate);

    (2)    the property has been given adequate marketing;

    (3)    the sale is in good faith (i.e., there is an absence of any lucrative deals with insiders); and

    (4)    adequate notice has been provided to creditors.

In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); In re Mama's Original Foods, Inc., 234 B.R. 500, 502-505 (C.D. Cal. 1999).  Debtor submits that the proposed sale of the Subject Property to the Buyers satisfies each of these requirements.

    a.    **Sound Business Purpose**

The Ninth Circuit Bankruptcy Appellate Panel in Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under Section 363(b). The facts pertaining to the sale at issue here amply substantiate the Debtor's business decision that the contemplated sale of the Subject Property to the Buyers or a successful over bidder serves the best interests of the estate's creditors and merits the Court's approval. As discussed herein, the Subject Property has been actively marketed by Dream Home Realty.  Additionally, the Subject Property has become a financial burden for the estate and warrants sale.

The proposed sale, or any overbid, of the Subject Property should result in the Debtor obtaining the highest and best price for the Subject Property. As set forth in the Declaration of Paula Rae Oliver, the Debtor's projected sale of the Subject Property will generate substantial funds to pay Ocwen's first deed of trust and the LA County Tax Collector's secured claims.  As a result, Debtor believes the sale is in the best interest of the Debtor's estate and her creditors.

b.    **Fair and Reasonable Price**

In order for a sale to be approved under § 363, the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership,* 55 B.R. 520 (Bankr. S.D. Cal. 1985). The trustee is given substantial discretion in this regard. *Id.* In addition, Courts have broad discretion with respect to matters under § 363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.,* 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985). In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *In re Wilde Horse Enterprises, Inc.,* 136 B.R. at 841 (*citing Matter of Chung King, Inc., 753 F.2d 547 (7th Cir. 1985), In re Alpha Industries, Inc.,* 84 B.R. 703, 705 (Bankr. Mont. 1988)).

As discussed above, the Subject Property has been actively marketed by Dream Home Realty. The Buyer is a serious buyer and has made a sound offer. Thus, based on the response to the foregoing efforts and the Debtor's familiarity with current market conditions, the Debtor believes that the price offered for the Subject Property by the Buyers, or any over bidder, represents the fair market value of the Subject Property. As a result, the Debtor submits that the final purchase price to be paid by the Buyers or an overbidder represents a fair and reasonable price for the Subject Property.

c.    **Adequate Marketing**

As discussed above, the efforts of Dream Home Realty to market the Subject Property has been extensive. Dream Home Realty has mailed and networked with other agents and brokers. They have held open houses. The Debtor has evaluated the offer on the Subject Property and believes the price is reasonable given market values and seeks to apply the proceeds of the sale to pay the lien holders on the Subject Property. Based on the foregoing, the Debtor submits that the Subject Property has been more than adequately marketed.

d.    **Good Faith**

When a Bankruptcy Court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986). With respect to the Trustee's conduct in conjunction with the sale of the Property the good faith requirement focuses principally on whether there is any evidence of "fraud, collusion between the purchase and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id. at 147; In re Wilde Horse Enterprises*, 136 B.R. at 842.

Debtor negotiated the agreement with the Buyer at arm's length, and the Buyer is not related to, nor an "insider" of the Debtor as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31). Moreover, there has been no fraud or collusion in connection with the proposed sale because everyone who expressed an interest in the Subject Property was able to make an offer on the Property and which offer was thoroughly considered by the Debtor. Based on the foregoing, the Debtor submits that the Buyer is a "good faith" purchaser.

e.      **Accurate and Reasonable Notice**

The purpose of the notice is to provide an opportunity for objections and hearing before the Court if there are objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. MD.Pa. 1988). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *Id.*

As set forth above, the Debtor served this Notice of Motion and Motion on the United States Trustee, all of the Debtor's known creditors and all parties requesting special notice. The Notice includes the date, time and place of the hearing and the time fixed for filing objections thereto. This Notice and Motion were served upon the parties who have liens and/or claims against, or interests in, the Subject Property. Debtor shall file the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court, as required by Local Bankruptcy Rule 6007-1(f), upon obtaining a hearing date from the Court, so that the Clerk of the Bankruptcy Court may publish information regarding the proposed sale. Thus, the Debtor submits that the notice of the sale should be deemed adequate, accurate and reasonable by the Court.

**3.      *The Sale of the Property Should Be Free and Clear of All Liens, Claims, and Interests Under 11 U.S.C. § 363(f).***

Bankruptcy Code § 363(f) provides that a trustee may sell property of the estate "free and clear of any interest in such property" if:

(1)      applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2)      such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

11 U.S.C. § 363(f).  Because § 363(f) is in the disjunctive, the Trustee must only meet one of the five subsections of § 363(f) in order to sell the Property free and clear of all liens, claims, and interests. *In re Whittemore*, 37 B.R. 93, 94 (Bankr. D. Or. 1984).

In the instant case, Debtor will use the proceeds of the sale to pay off all of the liens secured by the Subject Property including Ocwen's first deed of trust, and the LACTTC's secured claim and the Bankruptcy administrative fees to counel.

//

## IV.    CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order

(1)    Finding that notice of the Motion was adequate and appropriate under the circumstances;

(2)    Granting the Motion in its entirety;

(3)    Authorizing and approving the sale of the Subject Property to Freetown Holdings Company, Inc. (the "Buyer") or to another successful bidder, free and clear of all liens, claims, and interests;

(4)    Approving the bidding procedures described in the Memorandum of Points and Authorities;

(5)    Finding that the successful bidder is a good faith purchaser for the purposes of 11 U.S.C. § 363(m);

(6)    Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Subject Property;

(7)    Authorizing the payment of the commissions and attorney's fees described in the Memorandum of Points and Authorities at the close of escrow;

(8)    Authorizing payments of the liens, claims and interests on and against the Subject Property (collectively referred to herein as the "Liens, Claims and Interest");

(9)    Compelling all holders of the liens and encumbrances, if any, to execute any and all documentation that may be required to allow escrow to close;

(10)    Allowing the Debtor, pursuant to 11 U.S.C. § 542(a), to deliver the Subject Property to the purchaser free and clear of any tenancy, except as described herein; and

(11)    Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: July 16, 2018            By:    **A.O.E LAW & ASSOCIATES**

                    /s/ Anthony O. Egbase
                    Anthony O. Egbase
                    Attorney for the Debtor
                    *Paula Rae Oliver*

14

### DECLARATION OF PAULA RAE OLIVER

I, Paula Rae Oliver, declare as follows:

1.      I am the debtor and debtor-in-possession in the instant bankruptcy case (the "Debtor"). I make this declaration in support of the Motion to Sell Real Property located at 1 Rockinghorse, Rancho Palos Verdes, CA 90275 pursuant to 11 U.S.C. §363(f) (the "Motion"). I have personal knowledge of the statements made in this declaration, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto.

2.      I commenced the instant bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on May 5, 2015.

3.      I am employed as a real estate agent and broker.  As a result of the economic downturn in 2008, I suffered a loss in income and fell behind on my mortgage payments for my real properties. I filed the instant bankruptcy to reorganize my debts.

4.      On May 12, 2016, the Court entered the Order confirming my Chapter 11 Plan of Reorganization (the "Plan").  Since confirmation of my Plan, I have defaulted on my mortgage payments to Ocwen and my counsel received Notice of Default under Chapter 11 Plan regarding my real property located at 1 Rockinghorse, Rancho Palos Verdes, CA 90275. As a result, I have decided that it would be in the best interest of the estate to sell the Subject Property in order to pay off its liens in full.

5.      I am real estate agent and broker with Dream Home Realty and personally negotiated the Agreement with the Buyer.  A true and correct copy of the Purchase Agreement (the "Agreement") is attached herein as Exhibit "A". The Agreement provides for a purchase price of $1,200,000.00 which will satisfy the first deed of trust owed to

the Ocwen Loan Servicing, LLC, the secured claims of the LA County Tax Collector,

and Court approved Bankruptcy administrative fees for legal services rendered by

counsel and fees for legal services rendered in the filing of this motion and fees incurred

since the last fee application approval.

      6.    The Subject Property is encumbered by the following liens:

| | |
|---|---|
| Ocwen Loan Servicing, LLC | $900.000.00 |
| LA County Tax Collector: Unpaid Taxes from 07/01/2018 to 09/01/2018 | $2,134.70 |
| LA County Tax Collector: 2017-2018 Taxes plus penalty | $14,099.03 |
| LA County Tax Collector: Tax Default | $18,605.94 |
| Total Liens | $934,839.67 |

      7.    In the exercise of my business judgment, I believe it is in the best interest of

the estate to sell the Subject Property at the highest bid price and subject to over-

bidding.

      8.    Included in the fees is the sum of $27,215.00 for payment regarding court

approved bankruptcy administrative fees for legal services rendered.  Attached as

Exhibit "C" herein is a true and correct copy of Seller's Estimated Net Proceeds

      9.    My Counsel also estimates the sum of $5,000.00 in additional fees for

services rendered since approval of the prior fees application and for services rendered

for this motion.  Attached as Exhibit "B" herein is a true and correct copy of the Seller's

Estimated Net Proceeds.

      9.    Also, included in the fees is the sum of $48,000.00 for payment of broker

fees. See Exhibit "B".

10.    The Agreement was negotiated at arm's length and neither I nor my brokers have engaged in fraud or collusion in negotiating the proposed sale of my Subject Property.

11.    The Subject Property is currently a burden on the estate and a sale of the Subject Property will satisfy all of the liens secured by the Subject Property.

I declare under penalty and perjury that the foregoing is true and correct.  Executed on this 16th day of July, 2018, at Los Angeles, California.

Paula Rae Oliver

# Exhibit 1

# Notice of Default



## ROBERTSON ANSCHUTZ & SCHNEID
### L A W  O F F I C E S

March 6, 2018

*SENT VIA U.S. MAIL*

Paula Rae Oliver
4209 Scott Street
Torrance, CA 90503

*RECEIVED MAR 1 2 2018*

Clarissa D Cu
Anthony Obehi Egbase
Crystle J. Lindsey
A.O.E. Law & Associates APC
350 S. Figueroa St., Ste. 189
Los Angeles, CA 90071

RE:    **Notice of Debtor's Default under Chapter 11 Plan**
       In re: Paula Rae Oliver / Case No. 15-18116
       Property: 1 Rockinghorse Road, Rancho Palos Verdes, CA 90275

Dear Sir/Madam,

I represent Ocwen Loan Servicing, LLC ("Secured Creditor"). Secured Creditor is the
servicer for the deed of trust encumbering the above-referenced real property. Please consider
this letter as a Notice of Default under the terms of the Debtor's Confirmed Chapter 11 Plan.

According to my client, the Debtor has not made the following payments:

| Due date | Amount due | Late fee |
|---|---|---|
| 06/01/17 | $4,536.14 | $226.81 |
| 07/01/17 | $4,536.14 | $226.81 |
| 08/01/17 | $4,536.14 | $226.81 |
| 09/01/17 | $4,536.14 | $226.81 |
| 10/01/17 | $4,536.14 | $226.81 |
| 11/01/17 | $4,536.14 | $226.81 |
| 12/01/17 | $4,536.14 | |
| 01/01/18 | $4,536.14 | |
| | $36,289.12 | $1,360.86 |
| Total | $37,649.98 | |

Funds in Suspense: $3,819.93

Total amount now due: $33,830.05

The address where payments should be sent is:

Ocwen Loan Servicing, LLC
Attention: Cashiering Department
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

Secured Creditor hereby provides notice demanding the default be cured within 24 days of the date of this notice. If the Default is not cured within this timeframe, Secured Creditor will pursue its state law remedies with respect to the secured obligation.

Please notify me if the Debtor is able to cure the default within the timeframe listed above. Should you have any further questions, please feel free to contact me.

Sincerely,

By    /s/ Theron S. Covey
Theron S. Covey, Esq.
Attorney for Secured Creditor
7676 Hazard Center Drive, Suite 500
San Diego, CA 92108
Tel: 470-321-7112 x 181
Email: tcovey@rasflaw.com

# Exhibit 2

## Residential Listing Agreement

**CALIFORNIA ASSOCIATION OF REALTORS®**

## RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 6/17)

Date Prepared: _03/23/2018_

1. **EXCLUSIVE RIGHT TO SELL:** _____ _Paula R. Oliver_ _____ ("Seller")
hereby employs and grants _____ _Dream Home 4 U Realty & Investments_ _____ ("Broker")
beginning (date) _March 23, 2018_ and ending at 11:59 P.M. on (date) _December 31, 2018_ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _1 Rockinghorse Rd_
_____, situated in _____ _RPV_ _____ (City),
_Los Angeles_ (County), California, _90275_ (Zip Code), Assessor's Parcel No. _7568-008-020_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: _One Million, Five Hundred Sixty-Nine Thousand_
   _____ Dollars ($ _1,569,000.00_ ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ _5.000_ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____
   AND _____, as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _365_ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

Seller's Initials X(_____) (_____)

© 2017, California Association of REALTORS®, Inc.
RLA REVISED 6/17 (PAGE 1 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Dream Home 4 U Realty & Investments 4733 Torrance Blvd., #811 Torrance, CA 90503          Phone: 310.831.2618          Fax:                1 Rockinghorse
Paula Oliver                              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



Property Address: *1 Rockinghorse Rd, RPV, CA 90275*                                    Date: *03/23/2018*

4.  **A.  ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
    **ADDITIONAL ITEMS EXCLUDED:**
    **ADDITIONAL ITEMS INCLUDED:**
    Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

    **B.  (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
    ☐ Solar power system    ☐ Alarm system    ☐ Propane tank    ☐ Water Softener
    ☐ Other

    **(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
    ☐ Solar power system    ☐ Windows or doors    ☐ Heating/Ventilation/Air conditioning system
    ☐ Other
    Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5.  **MULTIPLE LISTING SERVICE:**
    **A.** Broker is a participant/subscriber to        *Greater South Bay*        Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

### BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials (            )(            )            Broker's/Agent's Initials (            )(            )

Seller's Initials X(            )  (            )

---

**RLA REVISED 6/17 (PAGE 2 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com            1 Rockinghorse

Property Address: 1 Rockinghorse Rd, RPV, CA 90275                                        Date: 03/23/2018

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

(1) Property Availability On The MLS; Address On the MLS: Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

(2) Feature Opt-Outs: Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

(a) Comments And Reviews: The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

(b) Automated Estimate Of Value: The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**

A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

C. Investigations and Reports: Seller agrees, within 5 (or ___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural ☐ Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.

D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property..

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**

A. **Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

D. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

Seller's Initials ✗ ( _____ )  ( _____ )

**RLA REVISED 6/17 (PAGE 3 OF 5)**



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com          1 Rockinghorse

Property Address: 1 Rockinghorse Rd, RPV, CA  90275                                    Date: 03/23/2018

   E. **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

10. **SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
   A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.
   B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

_____

_____

_____

_____

_____

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**
   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

Seller's Initials X (_____) (_____)

**RLA REVISED 6/17 (PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          1 Rockinghorse

Property Address: *1 Rockinghorse Rd, RPV, CA 90275*    Date: *03/23/2018*

    B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

    C. **ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:

_____

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _*[signature]*_____    Date *03/23/2018*
    *Paula R. Oliver*
Address *1 Rockinghorse Road*_____    City *RPV*____    State *CA*    Zip *90275*
Telephone _____ Fax _____    E-mail _____

Seller _____    Date _____
Address _____    City _____    State ____    Zip ____
Telephone _____ Fax _____    E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) *Dream Home 4 U Realty & Investments*    CalBRE Lic. # *01844166*
Address *4733 Torrance Blvd #811*_____    City *Torrance*    State *CA*    Zip *90503*
By _*[signature]*_____ Tel. *(310)831-2618*    E-mail *Paula.Oliver.DreamHome@g*    CalBRE Lic.# *01041711*    Date *03/23/2018*
  *Paula Oliver*
By _____ Tel. _____ E-mail _____    CalBRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ____ Date ____

**RLA REVISED 6/17 (PAGE 5 OF 5)**

**RESIDENTIAL LISTING AGREEMENT -EXCLUSIVE (RLA PAGE 5 OF 5)**



# EXHIBIT A

## Purchase Agreement

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438



CALIFORNIA
ASSOCIATION
OF REALTORS ®

**CALIFORNIA
RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

Date Prepared: *07/06/2018*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *Freetown Holdings Company Inc* ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is *1 Rockinghorse Road, RPV, CA 90275*, situated in
      *RPV* (City), *Los Angeles* (County), California, *90275* (Zip Code), Assessor's Parcel No. *7568-008-020* ("Property").
   C. **THE PURCHASE PRICE** offered is *One Million, Two Hundred Thousand*
      Dollars $ *1,200,000.00*
   D. **CLOSE OF ESCROW** shall occur on _____ (date)(or [X] *14* **Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a [X] "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent *Dream Home 4 U Realty & Investments* (Print Firm Name) is the agent of (check one):
      ☐ the Seller exclusively; or [X] both the Buyer and Seller.
      Selling Agent *Dream Home 4 U Realty & Investments* (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *36,000.00*
      **(1) Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or *within 24 hours of court approval of sale* );
      **OR (2)** ☐ **Buyer Deposit with Agent:** Buyer has given the deposit by personal check of _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ _____
      within _____ **Days** After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) **Days** After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
      the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or** _____ **) Days** After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** *CASH OFFER-AS IS*
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . $ *1,164,000.00*
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *1,200,000.00*

Buyer's Initials ( *AS* ) ( _____ )          Seller's Initials ( *AR* ) ( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Dream Home 4 U Realty & Investments 4733 Torrance Blvd., 8811 Torrance, CA 90503          Phone: 310.831.2618          Fax:          Freetown Holdi
Paula Oliver          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: 1 Rockinghorse Road, RPV, CA 90275                                    Date: July 6, 2018

**H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☒ Verification attached.)

**I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

**J. LOAN TERMS:**
**(1) LOAN APPLICATIONS:** Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
**(3) LOAN CONTINGENCY REMOVAL:**
Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
**(4)** ☒ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**
**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

| A. ADDENDA: | ☐ Addendum #  (C.A.R. Form ADM) |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Other |
| ☐ Short Sale Addendum (C.A.R. Form SSA) |  |

| B. BUYER AND SELLER ADVISORIES: | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ REO Advisory (C.A.R. Form REO) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ Other |

**6. OTHER TERMS:** _____
_____
_____
_____

**7. ALLOCATION OF COSTS**
**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
            prepared by sellers choice _____ .
(2) ☐ Buyer ☐ Seller shall pay for the following Report _____
        prepared by _____ .
(3) ☐ Buyer ☐ Seller shall pay for the following Report _____
        prepared by _____ .

Buyer's Initials ( AS ) ( _____ )                            Seller's Initials ( PC ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 2 OF 10)
           **CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Freetown Hold!

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: *1 Rockinghorse Road, RPV, CA 90275*                                      Date: *July 6, 2018*

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Each pay their own fees* _____ .

(b) Escrow Holder shall be *Palm West Escrow-Julie Harris* _____ .

(c) The Parties shall, within **5 (or ____) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☐ Buyer ☒ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E _____ .

(b) Owner's title policy to be issued by *USA National-Greg Snider* _____ .

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____ .

(2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee _____ .

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____ .

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____ .

(8) ☐ Buyer ☐ Seller shall pay for _____ .

(9) ☐ Buyer ☐ Seller shall pay for _____ .

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ *500.00* _____, of a standard (or ☒ upgraded) one-year home warranty plan, issued by *sellers choice* _____, with the following optional coverages: ☒ Air Conditioner ☒ Pool/Spa ☒ Other: *roof* _____

Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

**OR** ☐ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.

**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;

(3) The following additional items: _____

(4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.

(5) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.

(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____, and (ii) are transferred without Seller warranty regardless of value.

**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) *all personal property in or located on property* _____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials ( *MS* ) ( ____ )                                      Seller's Initials ( *JP* ) ( ____ )

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com           Freetown Heidi

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: 1 Rockinghorse Road, RPV, CA 90275 _____ Date: July 6, 2018

**9. CLOSING AND POSSESSION:**
- **A.** Buyer intends (or ☒ does not intend) to occupy the Property as Buyer's primary residence.
- **B.** **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ AM/☐ PM) on the date of Close Of Escrow; (ii)☒ no later than 7 calendar days after Close Of Escrow; or (iii) ☐ at _____ AM/☐ PM on _____.
- **C.** **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
- **D.** **Tenant-occupied property: Property shall be vacant** at least 5 (or _____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
  OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).
- **E.** At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
- **F.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
- **A.** **(1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and **(ii)** unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
  - **(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
  - **(3)** **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
  - **(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); **(ii)** if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
  - **(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
  - **(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
  - **(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
- **B.** **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.
- **C.** **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
- **D.** **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
- **E.** **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
- **F.** **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
  - **(1)** SELLER HAS: 7 (or _____ ) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( AS ) ( )                                      Seller's Initials ( PL ) ( )
**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Freetown Holdi

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: 1 Rockinghorse Road, RPV, CA 90275 _____ Date: July 6, 2018

(2) If the Property is a condominium or is located in a planned development or common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: **(i)** the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.
  **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
  **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
  **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
  **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**
  **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
  **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
  **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( AS ) ( _____ )          Seller's Initials ( _____ ) ( _____ )    

**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Freetown Holdi

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: 1 Rockinghorse Road, RPV, CA 90275 _____ Date: July 6, 2018

    E.  Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

    **A. SELLER HAS: 7 (or _____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

    **B. (1) BUYER HAS: 17 (or _____ ) Days** After Acceptance, unless otherwise agreed in writing, to: (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

        (2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

        (3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or _____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

        (4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

        (5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for **17 (or _7_ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

    **C.** ☐ **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

    **D. SELLER RIGHT TO CANCEL:**

        (1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

        (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    **E. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2 (or _____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

    **F. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

    **G. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 (or _____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

    **H. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

Buyer's Initials ( AS ) ( _____ )                  Seller's Initials ( AC ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: *1 Rockinghorse Road, RPV, CA 90275*    Date: *July 6, 2018*

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ☒ 2 ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
 **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

 **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
 **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or ___ ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

 **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( *AS* ) ( _____ )     Seller's Initials ( *JR* ) ( _____ )



**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  Freetown Holdi

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: *1 Rockinghorse Road, RPV, CA* 90275 _____    Date: *July 6, 2018*

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable)for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

B. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _RS_ / _____     Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. **THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.**

B. **ARBITRATION OF DISPUTES:**

**The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials _RS_ / _____     Seller's Initials _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( _RS_ ) ( _____ )     Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: *1 Rockinghorse Road, RPV, CA  90275*                                    Date: *July 6, 2018*

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise provided, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by *Paula Oliver*, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ AM/☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _____ BUYER *Abdul Slunff* _____
**(Print name)** *Freetown Holdings Company LLC*
Date _____ BUYER _____
**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials (  ) (  )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Freetown Holdi

DocuSign Envelope ID: 0BBF092C-F835-40EF-A0A2-BFBD8925F438

Property Address: 1 Rockinghorse Road, RPV, CA 90275                                Date: July 6, 2018

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) DATED: _____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date 7/13/2018  SELLER _____

**(Print name)** Paula Oliver

Date _____  SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)         personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
                  ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
                  Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
                  is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
                  Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D.** **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) Dream Home 4 U Realty & Investments                    DRE Lic. # 01844105
By _____  Paula Oliver DRE Lic. # 01041711           Date 7/6/2018
By _____  DRE Lic. # _____              Date _____
Address 4733 Torrance Blvd #811           City Torrance            State CA   Zip 90503
Telephone (310)831-2618      Fax _____   E-mail Paula.Oliver.DreameHome@gmail.com

Real Estate Broker (Listing Firm) Dream Home 4 U Realty & Investments                    DRE Lic. # 01844105
By _____  Paula Oliver DRE Lic. # 01741711           Date 7/13/2018
By _____  DRE Lic. # _____              Date _____
Address 4733 Torrance Blvd #811           City Torrance            State CA   Zip 90503
Telephone (310)831-2618      Fax _____   E-mail Paula.Oliver.DreamHome@gmail.com

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____    Escrow # _____
By _____                                  Date _____
Address _____
Phone/Fax/E-mail //_____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ July 7, 2018 _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

---

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer Acknowledges that page 10 is part of this Agreement   AS ( _____ )( _____ )
Buyer's Initials

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
·525 South Virgil Avenue, Los Angeles, California 90020

**RPA-CA REVISED 12/15 (PAGE 10 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**

# EXHIBIT B

Settlement Sheet – Escrow Instructions



**Palm West**
E S C R O W
I N C.
2615 Pacific Coast Hwy, Suite 110 • Hermosa Beach, CA 90254-2226
(310) 798-8800 • Fax (310) 798-8808

Prepared by: Julie E. Harris

### SELLER'S ESTIMATED SETTLEMENT STATEMENT

| | | |
|---|---|---|
| **PROPERTY:** | 1 Rockinghorse | **DATE:** July 16, 2018 |
| | Rancho Palos Verdes, CA 90275 | |
| | | **CLOSING DATE:** September 1, 2018 |
| **SELLER:** | Paula Oliver | **ESCROW NO.:** 00026-RBJ |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 1,200,000.00 |
| **PAYOFF CHARGES - First Trust Deed of Record** | | |
| **[Total Payoff $900,000.00]** | | |
| Principal Balance | 900,000.00 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| Unpaid Taxes at $6,404.10/semi-annually from 07/01/2018 to | 2,134.70 | |
| 09/01/2018 for Property Taxes | | |
| **COMMISSION CHARGES** | | |
| | 48,000.00 | |
| **OTHER DEBITS/CREDITS** | | |
| for Home Warranty Policy | 375.00 | |
| for Notary Services | 15.00 | |
| for Zone Disclosure Report | 114.00 | |
| AOE Law | 27,215.18 | |
| Car | 15,000.00 | |
| Personal Loans | 150,000.00 | |
| Misc | 5,000.00 | |
| AOE Law for Fees Legal Services | 5,000.00 | |
| **TITLE/TAXES/RECORDING CHARGES - to follow** | | |
| Owners Title Policy Fee | 2,700.00 | |
| Sub Escrow Fee | 75.00 | |
| Documentary Transfer Tax | 1,320.00 | |
| 2017-2018 Taxes plus penalty To LA County Tax Collector | 14,099.03 | |
| Tax Default to LA County Tax Collector | 18,605.94 | |
| **ESCROW CHARGES - Palm West Escrow, Inc.** | | |
| Escrow Fee | 2,985.00 | |
| **Net Proceeds** | 7,361.15 | |
| **TOTAL** | $ 1,200,000.00 | $ 1,200,000.00 |

### THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**A.O.E. Law & Associates, 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071**

A true and correct copy of the foregoing document entitled (*specify*): <u>DEBTOR'S MOTION TO SELL REAL PROPERTY, SUPPORTING DECLARATION OF PAULA RAE OLIVER AND SUPPORTING EXHIBITS</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>**07/16/18**</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Anthony Egbase on behalf of Debtor: info@anthonyegbaselaw.com
Leslie M. Klott on behalf of Ocwen Loan Servicing, LLC:  bankruptcy@zievelaw.com
Dare Law on behalf of Office of the U.S. Trustee (LA):  dare.law@usdoj.gov
Michael   J.   McCormick   on   behalf   of   Bosco   Credit   II   Trust   Series   10-00001: bankruptcyecfmail@mccallaraymer.com
Kelly L. Morrison on behalf of the Office of the U.S. Trustee (LA):  kelly.l.morrison@usdoj.gov
Kelly M. Raftery on behalf of the Bank of New York Mellon:  bknotice@mccarthyholthus.com
Gilbert B. Weisman, II on behalf of Main Street Acquisition Corp.:  notices@becket-lee.com

☐ Service information continued on attached page

**2.  <u>SERVED BY UNITED STATES MAIL</u>:**
On <u>**07/16/18**</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>VIA CERTIFIED MAIL</u>**
**Deutsche Bank National Trust Company**
**c/o Ocwen Loan Servicing**
**Attn: Bankruptcy**
**P.O Box 24605**
**West Palm Beach, FL 33416**

**Los Angeles County Treasurer & Tax Collector**
**PO Box 54110**
**Los Angeles, CA 90054**

☒ Service information continued on attached page

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>**07/16/18**</u> , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**<u>JUDGE'S COPY VIA PERSONAL DELIVERY</u>**
**The Honorable Vincent Zurzolo**
**255 E. Temple Street, Suite 1360**
**Los Angeles, CA 90012**

☐ Service information continued on attached page

1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

2

| 07/16/18 | Jose Flores | /s/ *Jose Flores* |
| Date | Printed Name | Signature |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Label Matrix for local noticing
0973-2
Case 2:15-bk-18116-VZ
Central District of California
Los Angeles
Mon Mar 26 23:29:42 PDT 2018

A.O.E. Law & Associates
350 S Figueroa St Ste 189
Los Angeles, CA 90071-1117

Deutsche Bank National Trust Company as Trus
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606-3401

LOS ANGELES COUNTY TREASURER AND TAX COLLECT
PO BOX 54110
LOS ANGELES, CA 90054-0110

Main Street Acquisition Corp
c/o Becket and Lee LLP
POB 3001
Malvern, PA 19355-0701

Ocwen Loan Servicing, LLC
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606-3401

The Bank of New York Mellon, f/k/a The Bank
c/o McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101-2607

UNITED STATES OF AMERICA on behalf of the IN
300 N. Los Angeles Street, Room 7211
Attn: Jolene Tanner
Los Angeles, CA 90012-3342

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Bosco Credit II Trust Series
Franklin Credit Management Corp.
P.O Box 2301
Jersey City, NJ 07303-2301

Bosco Credit II Trust Series 2010-1
c/o Franklin Credit Management Corp
P.O. Box 5147
Carol Stream, IL 60197-5147

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC 28272-1083

Citibank, N.A
701 East 60th Street North
Sioux Falls, SD 57104-0493

Deutsche Bank National Trust Compan
c/o Ocwen Loan Servicing
Attn: Bankruptcy
P.O Box 245605
West Palm Beach, FL 33416

Deutsche Bank National Trust Company
c/o Ocwen Loan Servicing, LLC
Attn: Bankruptcy Department
P.O. BOX 24605
West Palm Beach, FL 33416-4605

Deutsche Bank National Trust Company, as Tru
c/o Ocwen Loan Servicing, LLC
Attn: Cashiering Department
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409-6493

Eriko Navratil
1 Rockinghorse Road
Rancho Palos Verdes, CA 90275-5255

Estate of Rajesh Vashdev
311 S Meadows
Manhattan Beach, CA 90266-6909

Eufemio M. DeCeita
1 Rockinghorse Rd
Rancho Palos Verdes, CA 90275-5255

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Franchise Tax Board
PO Box 2952
Sacramento, CA 95812-2952

(p)FRANKLIN CREDIT MANAGEMENT CORP
101 HUDSON STREET
25TH FLOOR
JERSEY CITY NJ 07302-3984

HSBC Card Services
C/O Becket and Lee LLP
P.O Box 3001
Malvern, PA 19355-0701

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Merrick Bank
Resurgent Capital Services
P.O Box 10368
Greenville, SC 29603-0368

Ocwen Loan Serving, LLC
2710 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833-3505

Resurgent Capital Services
P.O Box 19008
Greenville, SC 29602-9008

Santander Consumer USA Inc.
P.O. Box 560284
Dallas, TX 75356-0284

Select Portfolio Servicing
P.O Box 65250
Salt Lake City, UT 84165-0250

Select Portfolio Servicing, Inc.
Agent for Service of Process:
Corporation Service Company which will d
business in California as CSC Service
2710 Gateway Oaks Drive, Suite 100
Sacramento, CA 95833-3505

The Bank of New York Mellon
C/O Select Portfolio Servicing, Inc.
3815 South West Temple
Salt Lake City, UT 84115-4412

The Wolf Firm
2955 Main Street
Irvine, CA 92614-2528

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560


Anthony Obehi Egbase
A.O.E Law & Associates, APC
350 S Figueroa St Ste 189
Los Angeles, CA 90071-1117

Clarissa D Cu
A.O.E. Law & Associates APC
350 S. Figueroa St., Ste. 189
Los Angeles, CA 90071-1117

Crystle J Lindsey
AOE Law & Associates
350 S Figueroa St Ste 189
Los Angeles, CA 90071-1117


Paula Rae Oliver
4209 Scott Street
Torrance, CA 90503-5450


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Franklin Credit Management Corporation
101 Hudson Street, 25th Floor
Jersey City, NJ 07302

INTERNAL REVENUE SERVICER
300 North Los Angeles Street
M/S 5022
Los Angeles, CA 90012

(d)Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Bosco Credit II Trust Series 2010-1

(u)Santander Consumer USA Inc.

(d)LOS ANGELES COUNTY TREASURER AND TAX COLLE
PO BOX 54110
LOS ANGELES CA 90054-0110


End of Label Matrix
Mailable recipients    36
Bypassed recipients     3
Total                  39